UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **DESIREE K. REEDUS MD,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:21-cv-00357-HAB-SLC |
| **DENIS MCDONOUGH,** *in his official Capacity as Secretary of the United States Department of Veterans Affairs, et al.,* | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the Government's motion to substitute, filed on February 22, 2023, seeking to substitute the United States of America for Defendant Wayne Z. McBride, DO. (ECF 51). Plaintiff timely filed a response in opposition on February 23, 2023 (ECF 52), to which the Government replied on March 9, 2023 (ECF 56). The Court took the motion under advisement and afforded the parties an opportunity to conduct limited discovery on the scope of employment issue. (ECF 57).

After the parties' limited discovery was complete, the Court directed Plaintiff to file a supplemental brief on the scope of employment issue by October 11, 2024, and Plaintiff did so. (ECF 94, 95). Defendant Denis McDonough filed a responsive brief in support of the motion to substitute on November 1, 2024. (ECF 98). The motion is now ripe for ruling.

For the following reasons, the Government's motion to substitute (ECF 51) will be GRANTED, and the United States of America is to be substituted for Defendant McBride in this case.

1

*A. Factual and Procedural Background*

The Court has previously addressed the factual and procedural history of this case, at length, in its Notice and Order dated April 14, 2023, on the issue of substitution. (ECF 57 at 1-3). As such, a recitation of the preceding events will be revisited at a minimum, here.

On February 22, 2023, the Government filed a motion for substitution pursuant to 28 U.S.C. § 2679(d)(1), seeking to take the place of Defendant McBride in this action, together with a certification from the Attorney General, indicating that McBride acted within the scope of his employment as an employee of the Department of Veterans Affairs ("VA") at the time the alleged acts and omissions giving rise to this employment discrimination, retaliation, and defamation case occurred. (ECF 51). Plaintiff filed an objection to the motion, asserting that McBride acted outside the scope of his employment when the allegations in the complaint occurred. (ECF 52).

Plaintiff averred that McBride acted outside his scope of employment, failing to follow the VA facility's employment verification process. (*See* ECF 57 at 3). The parties disagreed as to whether the scope of employment issue created cause for discovery on the matter. (*Id.*).

At the preliminary pretrial conference on March 1, 2023, the Court heard arguments from both sides about whether discovery was necessary on the scope of employment issue. (*Id.* at 3, 8). The crux of Plaintiff's contention was that "discovery on the employment verification process and the frequency of a chief of staff's involvement in such process" was necessary to determine whether McBride acted outside the scope of employment. (*Id.* at 3-4). Additionally, Plaintiff contended that "depositions of the parties involved at the time McBride completed and sent the defamatory employment verifications" were essential. (*Id.*).

On April 14, 2023, the Court issued a Notice and Order affording the parties an opportunity to conduct limited discovery on the scope of employment issue. (ECF 57). In doing

so, the Court explained that discovery "could enlighten the Court on whether the assignment of employment verifications to the HR department was a mere rule, which does not prevent a finding that McBride acted within his scope of employment, or whether it was more akin to conduct which he was not employed to perform." (*Id*. at 7 (citing *City of Indianapolis v. West*, 81 N.E.3d 1069, 1073 (Ind. Ct. App. 2017))).[1]

On October 11, 2024, Plaintiff filed a supplemental brief in opposition to the proposed substitution. (ECF 95). In the brief, Plaintiff argues that McBride was a high-level administrator who did not possess the responsibility of responding to employment verification requests. (*Id*. at 8). Defendant McDonough responded with a brief in support of substitution, essentially rebutting that McBride's role as Chief of Staff—supervisor of the credentialing department[2]—imbued McBride with the authority to respond to the employment verification at issue in this case. (ECF 98 at 10).

### B.  Legal Standard

In its April 14, 2023, Notice and Order, the Court set forth the following legal standard applicable to the parties' dispute about the substitution of the Government for McBride:

> "The Westfall Act . . . amended several provisions of the Federal Tort Claims Act to extend immunity to federal employees from liability for tortious conduct occurring within the scope of employment." *Taboas v. Mlynczak,* 149 F.3d 576, 579 n.1 (7th Cir. 1998). "When a tort action is brought against a federal employee, the Attorney General may certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Id*. (citing 28 U.S.C. § 2679(d)(1)). "This 'scope certification' by the Attorney General serves to substitute the United States as the sole defendant . . . ." *Id*. (citation omitted).

---

[1] The employer is VA Northern Indiana Health Care System ("VANIHCS"). (*See* ECF 95-2).

[2] Plaintiff refutes the claim that McBride had supervisory responsibility over the credentialing department, offering evidence that McBride was, instead, the manager of the Deputy Chief of Staff, who in turn, supervised the credentialing department. (*See* ECF 95 at 1-2; *see also* ECF 95-2; ECF 95-3).

3

>The certification "is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant.'" *Osborn v. Haley,* 549 U.S. 225, 246 (2007). Thus, the certification is subject to judicial review. *Martinez v. Lamagno*, 115 S. Ct. 2227, 2231 (1995). When a court reviews a scope certification, the question of "[w]hether the defendant['s] action fell within the scope of employment is decided under state law, and the plaintiff bears the burden of demonstrating that the Attorney General's scope certification was erroneous." *Taboas*, 149 F.3d at 582 (citations omitted).

(ECF 57 at 4).

### C. Analysis

As explained above, the Court provided the parties an opportunity to engage in limited discovery "to resolve material factual disputes related to scope of employment . . . ." (*Id*. at 5 (quoting *Godbout v. Parizek*, No. 03 C 2879, 2004 WL 442601, at *3 (N.D. Ill. Feb. 9, 2004))). Through discovery, Plaintiff has sought to overcome its burden of demonstrating that "the very practice of completing employment verifications was outside of McBride's duties, and in turn, his course of employment." (*Id*. at 6 (citing ECF 52 at 6)). As previously noted by the Court, the issue of the employment verification process is material in determining whether substitution of McBride is warranted. (*Id*.). To that point, under Indiana law "[e]ven a tortious act may be within the scope of employment if its 'purpose was, to an appreciable extent, to further [the] employer's business.'" *Bradley v. Tibbles*, No. 3:08-CV-366-JVB, 2009 WL 3242101, at *4 (N.D. Ind. Sept. 30, 2009) (second alteration in original) (citation omitted).

"Although scope-of-employment liability is rooted in . . . control, it extends beyond actual or possible control, holding employers responsible for some risks inherent in the employment context." *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 461 (Ind. 2018) (citations omitted). "Ultimately, the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or

4

predictably arise from those activities." *Id*. (citations omitted). "This means that the scope of employment . . . may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal." *Id*. (collecting cases). An employee is not acting within the scope of employment when "there is not even a slight nexus" between the employee's wrongful acts and his employment duties. *City of Indianapolis*, 81 N.E.3d at 1074 (citation omitted).

Here, the Court finds that Plaintiff has failed to carry its burden of demonstrating how McBride acted outside the scope of his employment. Plaintiff relies on discovery indicating that the Deputy Chief of Staff[3] was the supervisor of the Credentialing and Privileging (C&P) department, and from this fact, infers that McBride acted outside his scope of employment.[4] (*See* ECF 95-2). This argument is unpersuasive. First, Plaintiff offers evidence of a doctor in the capacity of Deputy Chief of Staff in 2016[5], but the issues in question occurred in 2019. (*See* ECF 95 at 4). Second, even if there was an active Deputy Chief of Staff at the time of the relevant employment verification request, Plaintiff fails to show why McBride's actions would be "akin to conduct which he was not employed to perform." (ECF 57 at 8).

---

[3] According to the discovery offered in support of Plaintiff's claim, the Deputy Chief of Staff reports directly to the Chief of Staff. (*See* ECF 95-2; *see also* ECF 95-3).

[4] Essentially, Plaintiff's argument relies on the belief that because there was a supervisor (Deputy Chief of Staff) hierarchically between the credentialing department and the Chief of Staff, McBride acted outside his scope of employment in responding to the employment verification request himself. (ECF 95 at 2). Extending Plaintiff's reasoning, ostensibly the Deputy Chief of Staff, but not the Chief of Staff, would have acted within the scope of employment in responding to the employment verification request.

[5] Plaintiff asserts that Dr. Lori Drumm was the Deputy Chief of Staff in 2016. (ECF 95 at 4). However, that does not necessarily establish that Drumm maintained that role in 2019. And although Plaintiff offers organizational charts to demonstrate that the C&P department reported to the Deputy Chief of Staff, Plaintiff has not explained who acted in that capacity in 2019. (*See* ECF 95-2; *see also* ECF 95-3).

Plaintiff unpersuasively argues that McBride was "not employed to perform routine clerical duties in an office not even under his direct control." (ECF 95 at 8). But Plaintiff does not provide any support[6] from the limited discovery to substantiate this argument. Even if the Chief of Staff is in a role similar to the President of the hospital, as Plaintiff argues, it does not follow that the Chief of Staff was incapable of responding to a credentialing request. Indeed, the decision to respond to the employment verification request furthered the business of VANIHCS by dispositioning an employment inquiry which the credentialing department oversaw. *See Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) ("[I]n order for an employee's act to fall 'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." (citations omitted)).

Relatedly, the record indicates that the responsibilities of the Chief of Staff included, among other expectations, the "efficient management of . . . credentialing and privileging . . . for Licensed Independent Practitioners . . . ." (ECF 95-4 at 5).[7] Management of credentialing and privileging was clearly a portion of McBride's occupation. Plaintiff possesses the burden in demonstrating why the Chief of Staff's responsibilities were so attenuated from employment

---

[6] VANIHCS's Bylaws provide an explanation of the Chief of Staff's duties, militating toward a finding that the Chief of Staff acted within his scope of employment when responding to an employment verification request. Notably, the Bylaws include "active maintenance of a medical credentialing . . . system" as part of the Chief of Staff's role. (ECF 95-4 at 5). The Bylaws note the following:

> The Chief of Staff is the President of the medical staff, Chairperson of the Clinical Executive Board, and Chairperson of the Professional Standards Board. The Chief of Staff also acts as full assistant to the Director in the efficient management of clinical and medical services to eligible patients, the active maintenance of a *medical credentialing and privileging* and/or scope of practice system for Licensed Independent Practitioners, Advance Practice Professionals and Associated Health Practitioners. The Chief of Staff ensures the ongoing medical education of medical staff.

(*Id.* (emphasis added)).

[7] The VANIHCS Bylaws define a Licensed Independent Practitioner as "any individual permitted by law and by the VANIHCS to provide care and services, without direction or supervision, within the scope of the individual's license and consistent with individually granted privileges. In this organization, this includes physicians and dentists." (ECF 95-4 at 6).

verification requests, that the acts were not incidental to McBride's responsibilities. Given, that McBride's role with VANIHCS included managing the credentialing of physicians, such as Plaintiff, the Court interprets McBride's employment verification actions as "subordinate" to McBride's role. *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (reasoning that acts incidental to authorized conduct can fall within the scope of employment, provided that such act "is subordinate to or pertinent to an act which the servant is employed to perform" (alteration in original) (citation omitted)). Consequently, Plaintiff's burden of demonstrating that the Attorney General's scope certification was erroneous has not been met.

Accordingly, the Government's motion to substitute (ECF 51) is GRANTED. The Clerk is DIRECTED to substitute the United States of America in lieu of Defendant McBride in the case caption.

SO ORDERED.

Entered this 18th day of December 2024.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge